PEOPLE v COBURN

Docket No. 73553. Submitted May 2, 1984, at Detroit.—Decided February 19, 1985. Leave to appeal applied for.

Defendant, Ella Coburn, was arrested for the misdemeanor offense of driving without a driver's license when she could not produce convincing identification when stopped by police. Because the police could not identify her she was denied bail and a search of her purse prior to fingerprinting her and placing her in detention revealed a loaded handgun. She was thereupon charged with carrying a concealed weapon. The Recorder's Court of Detroit, Dalton A. Roberson, J., granted defendant's motion to suppress the evidence of the gun and dismissed the weapons charge. The trial court held that the gun had been seized in violation of the defendant's right to post immediate bond under the interim bond statute. The prosecutor appealed. *Held:*

1. The determination that defendant was not eligible for bond and the subsequent detention of defendant were both reasonable under the circumstances and authorized by the interim bond statute. The police acted properly in detaining the defendant until they could identify her and determine, pursuant to the statute, whether she was wanted by authorities on any other outstanding charges.

2. The inventory search made incident to placing defendant in detention was proper. The gun was, therefore, admissible. The trial court erred in suppressing the evidence.

Reversed.

Hood, J., dissented. He would hold that, prior to the amend-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 5 Am Jur 2d, Arrest § 9.

8 Am Jur 2d, Bail and Recognizance § 39.

68 Am Jur 2d, Searches and Seizures §§ 39, 92-98.

[1, 3, 4] 73 Am Jur 2d, Statutes § 347 *et seq.*

Constitutionality of searching premises without search warrant as incident to valid arrest—Supreme Court cases. 23 L Ed 2d 966.

Lawfulness of search of motor vehicle following arrest for traffic violation. 10 ALR3d 314.

[2] 4 Am Jur 2d, Appeal and Error §§ 166, 517, 797, 801.

ment of the interim bond statute in 1984, the police were not justified under the statute in denying the defendant the right to post immediate bail. The detention of the defendant failed to effectuate the purpose of the statute, which is to avoid the unnecessary incarceration of minor offenders. The majority's decision in essence gives the 1984 amendment retroactive effect, a result not intended by the Legislature. He would affirm.

OPINION OF THE COURT

1. BAIL — MISDEMEANOR DEFENDANTS — DETENTION — SEARCHES AND SEIZURES.

The police were authorized to detain a person arrested for a misdemeanor, pursuant to the interim bond statute prior to its revision in 1984, where they were not able to establish the arrestee's identity and thus could not make an informed decision whether the arrestee was wanted by police authorities to answer to another charge; a search made incident to such detention was proper and evidence relevant to the commission of another crime discovered in such a search did not need to be suppressed (MCL 780.581; MSA 28.872[1]).

DISSENT BY HOOD, J.

2. APPEAL — EVIDENCE — SUPPRESSION OF EVIDENCE.

*A trial court's decision on a motion to suppress evidence will not be reversed unless that decision was clearly erroneous.*

3. BAIL — MISDEMEANOR DEFENDANTS — DETENTION — SEARCHES AND SEIZURES.

*A defendant arrested for a misdemeanor has an absolute right to immediate bail unless the police can justifiably incarcerate the defendant; an inability to positively identify an arrestee or a suspicion that the arrestee was concealing his or her identity did not justify incarceration and an incidental search under the interim bond statute prior to its amendment in 1984 (MCL 780.581; MSA 28.872[1]; 1983 PA 61).*

4. STATUTES — AMENDMENT OF STATUTES — RETROACTIVITY.

*An amendment to a statute is generally construed as changing the meaning of the statute unless a contrary intent is manifest; furthermore, statutory amendments are not to be given retroactive effect unless the Legislature clearly and unequivocally indicates otherwise.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prose-

cuting Attorney, *Edward Reilly Wilson,* Deputy
Chief, Civil and Appeals, and *Timothy A. Baugh-
man,* Principal Attorney, Research, Training and
Appeals, for the people.

*Edick & Esper* (by *Robert E. Edick),* for defen-
dant on appeal.

Before: GRIBBS, P.J., and HOOD and R. D. KUHN,*
JJ.

R. D. KUHN, J. Defendant was charged with
carrying a concealed weapon, MCL 750.227; MSA
28.424. The trial court granted defendant's motion
to suppress evidence of the gun. The court found
that the gun had been seized in violation of defen-
dant's right to post immediate bond under the
interim bond statute, MCL 780.581; MSA 28.872(1).

The facts presented at the hearing on defen-
dant's motion are as follows. On Monday, May 9,
1983, at about 12:20 p.m., a state trooper stopped
defendant, while she was driving, for equipment
violations. Defendant produced a pictureless Ten-
nessee license. She could not quote the birthdate
on that license and a passenger in her car told the
trooper that defendant's name was different than
the name written on the Tennessee license. Defen-
dant told the trooper that she did not have any
other identification.

The trooper arrested defendant for driving with-
out a license, MCL 257.901; MSA 9.2601, a misde-
meanor. He took defendant into custody, placed
her purse under his control, and drove defendant
to the Detroit Police Department's third precinct.
The arresting trooper escorted defendant to the
booking area and gave defendant's purse to the
booking officer. The booking officer advised defen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dant that she had a right to post bond in the amount of $50, pursuant to the interim bond statute. MCL 780.581; MSA 28.872(1), *People v Dixon*, 392 Mich 691; 222 NW2d 749 (1974). Defendant said she had the money to do so, $118. However, because defendant could not identify herself, the desk sergeant and lieutenant decided that defendant was not bondable because her identity was uncertain. The booking officer told defendant she was not bondable and began to process her. The booking procedure included an inventory search of the arrestee's personal belongings. The booking officer searched defendant's purse before she was fingerprinted and placed into the detention area. The officer found a loaded handgun in defendant's purse and arrested defendant for carrying a concealed weapon.

The interim bond statute, MCL 780.581; MSA 28.872(1),[1] provides that a misdemeanant charged with an offense punishable by not more than 90 days imprisonment, a $100 fine or both is entitled to be taken without unnecessary delay before a magistrate to answer to the complaint. If a magistrate is not available, then the arrested person must be allowed to post a cash bond with the police officials. Subsection (3), however, provided at the time of defendant's arrest:

"(3) If, in the opinion of the arresting officer or department, the arrested person is under the influence of liquor or narcotic drug, is wanted by police authorities to answer to another charge, or it is otherwise unsafe to release him, the arrested person shall be held until he is in a proper condition to be released, or until the next session of court." MCL 780.581(3); MSA 28.872(1)(3).

---

[1] The interim bond statute was amended in 1983 by 1983 PA 61 (effective March 29, 1984).

In *Dixon, supra,* the Supreme Court held that in order to make the right to immediate bond effective, evidence seized in a search incident to incarceration conducted before allowing a defendant the opportunity to post bond must be suppressed. *Dixon,* pp 700, 705-706. In *Dixon,* the Supreme Court did not discuss the exceptions contained in subsection (3) because the facts and circumstances of Dixon's arrest would not have warranted its application.

In the present case, unlike the circumstances in *Dixon,* defendant was suspected of concealing her identity. Defendant's only identification was a pictureless out-of-state license. Defendant was unable to recite the birth date listed on that license. A passenger in defendant's car told the arresting officer that defendant's name was something different than that which appeared on the driver's license. When defendant could not properly identify herself, the police determined she was not bondable.

In our opinion, this determination and the subsequent detention of defendant were both reasonable and authorized by the interim bond statute. At the time of defendant's arrest, subsection (3) provided that "[i]f, in the opinion of the arresting officer or department, the arrested person * * * is wanted by police authorities to answer to another charge * * * the arrested person shall be held until he is in a proper condition to be released, or until the next session of court". MCL 780.581(3); MSA 28.872(1)(3). Since the Legislature committed to the opinion of the arresting officer the question of whether an arrestee is wanted by police authorities to answer to another charge, it must be presumed that the Legislature intended that the officer's opinion be informed, reasonable, and articulable. The reference to "police authorities", as op-

posed to, for instance, the arresting officer's own department, indicates that the Legislature intended that an arrestee not be bondable if he or she is wanted by any police authority anywhere. Implicit in these provisions, that the decision to bond be based on an informed opinion and that the bond be denied if the arrestee is wanted by any police agency, lies the authorization for reasonable procedures to effectuate the provisions of the statute.

The purpose of the interim bond statute is to avoid unnecessary incarceration of minor offenders. *Dixon, supra,* p 703. In the present case, the detention of defendant was reasonably necessary. The police could formulate no reasonable opinion on whether or not defendant was wanted by police authorities to answer for another charge without ascertaining, by some means not dependent on defendant's demonstrated lack of credibility, who she was. The police could not make an informed decision whether defendant was wanted by police authorities absent a correct name from defendant. Thus, the detention of defendant, which was necessitated by defendant's inability to identify herself properly to the police, was a reasonable means of effectuating the provisions of the statute.

We hold, under the prior interim bond statute, that when police are faced with reasonable and articulable grounds to believe that an arrestee has not demonstrated or established his or her identity, and are, therefore, unable to ascertain whether the arrestee is wanted by police authorities to answer for another charge, they may detain the misdemeanant for the period of time necessary to complete an identification procedure not dependent on the arrestee's credibility. We would not, however, authorize such a procedure (here, fingerprinting) in every misdemeanor arrest. On the

facts of this case, however, fingerprinting was reasonably necessary to effectuate the overall scheme of the statute.[2] Since defendant was properly detained under subsection (3) while the police ascertained whether she was wanted by police authorities, the search incident to her incarceration was proper. Therefore, the trial court's order granting defendant's motion to suppress is reversed.

Reversed.

GRIBBS, P.J., concurred.

HOOD, J., *(dissenting)*. I must respectfully dissent.

This Court reverses a trial court's decision on a motion to suppress evidence only if that decision is clearly erroneous. *People v Bandy,* 105 Mich App 240, 244; 306 NW2d 465 (1981). I can find no clear error in this case.

At the suppression hearing, the booking officer testified that, even if defendant had been bondable, it was the precinct's normal procedure to fingerprint misdemeanor arrestees and book and detain them for the two or three hours necessary for fingerprint identification to clear. Part of that booking procedure was an inventory search of the arrestee's personal belongings.

The trial court found that,

"[T]he Detroit Police Department policy of requiring a person prior to making a bond under the interim

[2] Citing 1978 OAG 5292, p 421, April 13, 1978, defendant also argues that the police may not condition an arrested person's right to post bond on that person's submission to fingerprinting. 1978 OAG 5292 discussed the procedure of conditioning an otherwise bondable person's right to bond on fingerprinting. In the present case, however, the police determined that defendant was not bondable. We do not address any issue concerning LEIN checks as a LEIN check was not at issue in this case.

bond statute being subjected to certain identification
procedures and certain lein checks is in direct conflict
with the interim bond statute and therefore, I suppress
the evidence * * *.''

The parties do not dispute that the trooper
arrested defendant for a misdemeanor which trig-
gered application of the interim bond statute. That
statute provided:

"Sec. 1. (1) When any person is arrested without a
warrant for a misdemeanor, violation of a city, village,
or township ordinance punishable by imprisonment for
not more than 90 days or by a fine of not more that
$100.00, or both, the officer making the arrest shall
take, without unnecessary delay, the person arrested
before the most convenient magistrate of the county in
which the offense was committed to answer to the
complaint made against him.

"(2) If no magistrate is available or immediate trial
cannot be had, the person so arrested may recognize to
the direct supervisor of the arresting officer or depart-
ment or the sheriff or his deputy in charge of the
county jail if the person so arrested is lodged in the
county jail for his appearance by leaving with him:

"(a) A sum of money not to exceed $100.00, if the
offense is punishable by imprisonment for not more
than 90 days or by a fine, or both except as provided in
subdivision (b).

"(b) A sum of money not to exceed $200.00, if the
offense is a violation of sections 619, 625 or 626 of Act
No. 300 of the Public Acts of 1949, as amended, being
sections 257.619, 257.625 and 257.626 of the Compiled
Laws of 1948, or an ordinance corresponding thereto.

"(3) If, in the opinion of the arresting officer or
department, the arrested person is under the influence
of liquor or narcotic drug, is wanted by police authori-
ties to answer to another charge, or it is otherwise
unsafe to release him, the arrested person shall be held
until he is in a proper condition to be released, or until
the next session of court.'' MCL 780.581; MSA 28.872(1).

The people argue in this appeal that the police did not violate defendant's statutory right to post interim bond for two reasons. First, defendant was not bondable because, pursuant to subsection (3) of the statute, it was not safe to release defendant while her identity was uncertain. Second, even if defendant was bondable, the interim bond statute implicitly authorized a detention period for ascertainment of an accused misdemeanant's identification to allow the police a discovery period to determine whether the accused misdemeanant was wanted by authorities to answer to another charge. Under this second argument, the people claim that if this detention period is authorized by the interim bonding statute, then it is necessary to do an inventory search of the arrestee's property incident to booking or incarceration for safety purposes.

I find that *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974), is dispositive. The inventory search of defendant's purse cannot be defended unless the police could *justifiably* incarcerate defendant. Otherwise, defendant had an absolute right to immediate bail, "a right rooted in Const 1963, art 1, §§ 15 and 16, as well as the Eighth Amendment". *Dixon,* p 700. I cannot find justification for incarceration under the statute based upon uncertain identity or the suspicion that defendant was concealing her identity. Nor can I find that an uncertain identification, without more, causes as accused misdemeanor offender to be unsafe within the meaning of subsection (3) of the interim bond statute. Therefore, I conclude that defendant was bondable.

The real issue here is whether a bondable accused misdeameanant subject to the interim bond statute may be booked and detained to allow the police to fingerprint that accused offender and

"clear" those fingerprints before allowing the misdemeanant to post bond. I do not find authorization for such a procedure or detention in the interim bonding statute. In *Dixon,* p 703, the Court said the sense of the statute and its purpose was the avoidance of unnecessary incarceration of minor offenders. Certainly, a regularly enforced police procedure which incarcerates all bondable accused misdemeanants for two or three hours does not serve this purpose. Therefore, I cannot read the phrase "is wanted by police authorities to answer to another charge" so expansively as to include a booking and two or three hour incarceration to allow police the opportunity to discover whether the accused misdemeanant may be wanted to answer to another charge.

I note that effective March 29, 1984, the Legislature did give police officers the authority to detain a misdemeanant under these circumstances. MCL 780.581(3); MSA 27.872(1)(3) was amended by 1983 PA 61 to provide:

> "(3) If, in the opinion of the arresting officer or department, the arrested person is under the influence of intoxicating liquor or a controlled substance or a combination of intoxicating liquor and a controlled substance, is wanted by police authorities to answer to another charge, *is unable to establish or demonstrate his or her identity,* or it is otherwise unsafe to release him or her, the arrested person shall be held at the place specified in subsection (4) until he or she is in a proper condition to be released, or until the next session of court." (Emphasis added.)

Generally, an amendment to a statute is construed, unless a different intent is manifest, as changing the meaning of the statute. *Bonifas-Gorman Lumber Co v Unemployment Compensation Comm,* 313 Mich 363, 369; 21 NW2d 163 (1946);

*Reinelt v Public School Employees' Retirement Bd,*
87 Mich App 769, 774; 276 NW2d 858 (1979), *lv
den* 407 Mich 855 (1979). Moreover, statutory
amendments are not to be given retroactive effect
unless the Legislature clearly and unequivocally
indicates otherwise. *Chesapeake & Ohio R Co v
Public Service Comm,* 5 Mich App 492, 506; 147
NW2d 469 (1967).

I find nothing in the pre-amendment interim
bond statute that indicates that the enacting Leg-
islature intended the statute to authorize deten-
tion to allow the police to positively ascertain a
misdemeanant's identity. Furthermore, I find noth-
ing in the language of the amendment that indi-
cates the amendment should be held retroactive.
The majority opinion does, in essence, cause the
amendment to apply retroactively. I believe such
to be beyond the purview of this Court.

I would affirm.